# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 08-CR-0186-CVE |
| | ) | (16-CV-0528-CVE-PJC) |
| MICHOL DALE DINGMAN, | ) | |
| a/k/a Michael Dale Dingman, | ) | |
| a/k/a Michol D. Dingman, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

On August 11, 2016, defendant Michol Dale Dingman, a federal prisoner appearing pro se, filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Dkt. # 57. Section 2255 provides that "a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."

## I.

On January 5, 2009, defendant pled guilty to attempting to manufacture methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(c) (count one) and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(I) (count two). Dkt. # 15. Defendant was sentenced to a total of eighty-one months imprisonment. The Court imposed a three-year term of supervised release for count one and a five-year term for count two, said terms to run concurrently, each with the other. Dkt. # 26. Standard conditions of supervised release were

imposed, along with four special conditions: a substance abuse treatment and testing condition, a search condition, financial conditions, and a mental health condition. Id.

On June 11, 2015, an order on supervised release (Dkt. # 28) was entered, alleging that defendant had violated standard condition of supervised release number seven by testing positive for methamphetamine on five occasions, as well as standard condition number three and special condition number one, by failing to report for substance abuse treatment and testing, as instructed by the probation officer. On August 17, 2015, a superseding order on supervised release (Dkt. # 39) was entered, alleging that defendant violated a mandatory condition by committing a new law violation, assault and battery with a dangerous weapon, in addition to the three previous violations alleged in the original order on supervised release. On August 18, 2015, a revocation hearing was held before the Court, at which defendant was represented by assistant federal public defender Rob Ridenour. Dkt. # 45. At the hearing, defendant stipulated to all allegations except the new law violation, and the Court declared the original order on supervised release (Dkt. # 28) moot. Dkt. # 64, at 2. The parties did not object to defendant's appearance in state court on the new law violation prior to an additional revocation hearing in this matter. Id. at 4. The Court set a final revocation hearing for January 27, 2016. Id. at 6.

On January 27, 2016, a second revocation hearing was held before the Court regarding the single remaining allegation in the superseding order on supervised release (Dkt. # 39), that defendant had violated a mandatory condition of supervised release by committing the state law violation of assault and battery with a dangerous weapon. Defendant was represented at the hearing by assistant federal public defender William Widell, who was standing in for Ridenour. Dkt. # 65, at 3. After defendant denied that he violated a mandatory condition by committing assault and battery with a

2

deadly weapon, the Court held an evidentiary hearing to determine by a preponderance of the evidence whether defendant had violated a mandatory condition. Id. at 3-4.

The government's first witness was United States Probation Officer Alton Livingston, who testified that defendant called her and left a voice mail on the morning of June 10, 2015 advising her that defendant had gotten into a fight the night before, and that he stabbed the man he was fighting after the other man had pulled out a knife first. Id. at 7-8. Livingston testified that defendant said he had a black eye and was in fear for his life. Id. Livingston also testified that she spoke with Officer Chris Edwards of the Skiatook Police Department, who told Livingston that defendant had contacted their department because he was afraid someone was trying to kill him. Id. at 8. Livingston testified that Edwards told her that he told defendant to come to the police station so they could help him, and that when the defendant arrived, defendant told Edwards that he had stabbed a guy and now people were following him and trying to kill him. Id. Livingston further testified that she spoke to the detective investigating the stabbing, who told her that he had spoken to the victim and other witnesses to the stabbing and that they believed defendant was the person who had committed the crime. Id. Widell cross-examined Livingston, during which he attempted to characterize defendant's voice mail as defendant reporting an act of self defense. See id. at 12 ("And based on that conversation with [defendant], at least according to him, you learned that it appeared to be a self-defense situation?").

The government's second witness was Edwards, who testified that the Skiatook Police Department received a 9-1-1 call from defendant stating someone was trying to kill him, and that defendant was instructed to go to the police station for help. Id. at 17. Edwards stated that he was waiting in front of the station for defendant when he arrived, and that defendant told Edwards that

3

someone was following him and trying to kill him because he stabbed a man in Bartlesville the night before. Id. Edwards testified that defendant appeared to be under the influence of methamphetamine, and that he found four individual bags of a crystal-like substance in the car that were later tested and confirmed to be methamphetamine. Id. at 18. On cross-examination, Widell emphasized that Edwards was not present during the stabbing and had not spoken to anyone other than defendant about the stabbing. Id. at 19.

After the evidence was presented, Widell spoke on defendant's behalf, arguing that neither witness was present during the altercation, and that defendant's statements indicate the stabbing was self defense. Id. at 21. The Court noted that defendant had "four or five more assaults and batteries and other pending charges for assault and battery" since the date of the stabbing, and that the Court could postpone the matter to allow probation time to file a second order on supervised release to include the other assaults and batteries. Id. at 22-23. The following exchange then took place:

> THE DEFENDANT: Could I get another lawyer? Let's just go ahead and get it over with, Judge. I don't want to do that.
>
> MR. WIDELL: Let me see if we –
>
> THE COURT: You need to talk to your lawyer.
>
> MR. WIDELL: Let me see if we have a stipulation.
>
> THE DEFENDANT: We don't need to do that. Let's just go ahead and plead out and get this over with.
>
> THE COURT: Do you want time to think about it?
>
> THE DEFENDANT: I violated. I did –
>
> THE COURT: You did, in fact, call Ms. Livingston?
>
> THE DEFENDANT: Yeah, I called Ms. Livingston and told her that I was in a fist fight, a knife was pulled, and stuff went bad, and I was

4

|              |                                                                                                                                                                                                                   |
|--------------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|              | coming to her to turn myself in. . . . [A]nd a bunch of other stuff has happened since I've been in the county jail and I don't want that back on me. Let's just . . . do this right here and get this over with. |
| THE COURT:   | All right. And you did go to the Skiatook Police Department because you though they were coming after you; right?                                                                                                 |
| THE DEFENDANT: | Yeah. I was tweaked out of my mind.                                                                                                                                                                              |
| THE COURT:   | Right. Yeah. You did say you were in a fight, knives were pulled, and the other man was –                                                                                                                         |
| THE DEFENDANT: | I was defending myself in the fight. . . . It was a fist fight over a chick, the dude pulled a knife, and –                                                                                                     |
| THE COURT:   | Well, you were both fighting at the time. You were already in the fight at the time?                                                                                                                              |
| THE DEFENDANT: | Yeah. The dude pulled a knife, I dodged, I pulled a knife, he didn't get me, I got him. I'm guilty on that . . . I'm not trying to get all of this and drag it out for eight or nine more months. Let's just get it over with. |

Id. at 23-25. Because defendant did not admit to the assault and battery, but was asserting self defense, the Court told defendant that if he did not admit he committed assault and battery with a deadly weapon then the Court would allow probation to update the order and superseding order on supervised release to add his other assault and battery offenses. Id. at 25. Widell then asked the Court if it would be possible to stipulate that sufficient evidence existed for the Court to find defendant guilty by a preponderance of the evidence. Id. The Court stated that would be possible and gave Widell time to have an off-the-record conversation with defendant. Id. at 25-26. After the off-the-record discussion, Widell told the Court that defendant would stipulate that sufficient evidence existed that the Court could find by a preponderance of the evidence that defendant violated the mandatory condition by committing assault and battery with a dangerous weapon. Id. at 26. The

Court accepted the stipulation and found by a preponderance of the evidence that defendant's conduct on June 10, 2015 involved assault and battery with a dangerous weapon following prior felonies, which is punishable by a term of imprisonment exceeding one year and a is a crime of violence. Id. at 26-27.

The Court asked whether defendant wanted to proceed with sentencing that day or if he wished to have additional time. Id. at 27. Widell stated that defendant wanted to proceed, and that he had reviewed the supervised release revocation sentencing memorandum and discussed it with defendant. Id. Defendant confirmed that he wished to proceed and had reviewed the memorandum with Widell. Id. at 28. The Court found, without objection, that defendant faced a guideline range of 24 months of custody on count one and 46 to 57 months on count two. Id. at 29-30. Before sentencing defendant, the Court gave Widell and defendant the opportunity to speak on defendant's behalf. Id. at 31. Widell asked the Court to take into account that he had not spent as much time with defendant as Ridenour. Id. Widell also pointed out that the first thing defendant did after the stabbing was contact his probation officer and the police, and argued that defendant's conduct was most likely "fueled by a methamphetamine addiction, and probably mental health issues, as well." Id. The Court, defendant, and Widell engaged in an extended colloquy about defendant's need for drug and mental health treatment and defendant's pending state court charges, during which defendant expressed a strong desire to get treatment and change his behavior. Id. at 31-40.

The Court sentenced defendant to 24 months custody of the Bureau of Prisons as to count one and 57 months custody as to count two, said counts to run concurrently, for a total sentence of fifty-seven months. Id. at 42, 46. A term of supervised release of twelve months was imposed as to count one and no term of supervised release was imposed as to count two. Id. The Court also

recommended that defendant be placed in a facility that would allow him the opportunity to participate in the most comprehensive drug treatment program and mental health program available during his incarceration. Id. at 42-43. The Court advised defendant that he had the right to appeal his sentence, that any appeal must be filed within 14 days of the judgment, and that forms were available to apply to appeal without prepayment of costs. Id. at 45. Defendant did not appeal his sentence. On August 11, 2016, defendant filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Dkt. # 57.

**II.**

Defendant asserts four grounds for relief in his § 2255 motion: (1) Widell was ineffective because he was unfamiliar with the case, did not properly question the witnesses, and turned a Grade C violation hearing into a Grade A violation; (2) defendant was not mentally stable at sentencing because he was not on his mental health medication; (3) defendant could not make competent decisions at the hearing because he was on illegal drugs; and (4) defendant was not able to make a competent decision when he stated he wanted to proceed with sentencing on January 27, 2016 because he was inebriated on drugs. Dkt. # 57, at 4-8.

The government argues that defendant's second, third, and fourth claims are procedurally barred because defendant could have raised the claims on direct appeal but failed to do so. Tenth Circuit precedent is clear that "[s]ection 2255 motions are not available to test the legality of matters which should have been raised on direct appeal." United States v. Warner, 23 F.3d 287, 291 (10th Cir. 1994). Criminal defendants may not use § 2255 motions as a substitute for a direct appeal, and failure to raise an issue at trial or on direct appeal creates a procedural bar. United States v. Cervini, 379 F.3d 987, 990 (10th Cir. 2004); United States v. Barajas-Diaz, 313 F.3d 1242, 1245 (10th Cir.

7

2002). Procedural default can be excused if defendant can show that cause and prejudice exist to excuse the default or that a fundamental miscarriage of justice has occurred. Barajas-Diaz, 313 F.3d at 1247. Ineffective assistance of counsel constitutes "cause" excusing a procedural default. United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995), abrogated on other grounds by Neill v. Gibson, 278 F.3d 1044, 1057 n.5 (10th Cir. 2001).

Defendant's second, third, and forth claims could have been brought on direct appeal, but defendant did not bring a direct appeal. Therefore, these claims are procedurally barred. In order to overcome the procedural bar, defendant must show that he had cause for his failure to raise the arguments earlier. Consistent with Supreme Court and Tenth Circuit precedent, the Court construes defendant's pro se motion liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); Gaines v. Stenseng, 292 F.3d 1222, 1224 (10th Cir. 2002). However, defendant still bears the burden to show cause and prejudice or that a fundamental miscarriage of justice requires a court to excuse his procedural default. George v. Perrill, 62 F.3d 333, 335 (10th Cir. 1995). Defendant has presented no cause for his failure to appeal, nor has he demonstrated that a fundamental miscarriage of justice will result from the application of the procedural bar. Thus, defendant's second, third, and fourth claims are procedurally barred.

Defendant also asserts a claim of ineffective assistance of counsel. To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's

conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). In Glover v. United States, 531 U.S. 198, 199 (2001), the Supreme Court held that "any amount of actual jail time has Sixth Amendment significance." Thus, the prejudice prong of the Strickland test does not require that any increase in sentence must meet a standard of significance. See United States v. Horey, 333 F.3d 1185, 1187-88 (10th Cir. 2003). A court deciding an ineffectiveness claim "need not determine whether counsel's performance was delinquent before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Strickland, 466 U.S. at 697.

Defendant first argues that Widell was ineffective because he was unfamiliar with the facts and circumstances of his case. The transcript of the January 27, 2016 hearing belies defendant's assertion. At no point in the hearing did Widell assert incorrect facts or appear confused as to the details of the case. Widell discussed details of defendant's case while advocating for defendant and during his cross-examinations. Moreover, Widell and defendant both stated that Widell reviewed

9

the supervised release revocation sentencing memorandum with defendant. Widell asked the Court to take into account that Ridenour spent more time with defendant than Widell had, but just because Ridenour was more familiar with defendant does not mean Widell was ineffective. There is simply no evidence that Widell was unfamiliar with defendant's case, let alone so unfamiliar that he performed below the level expected from a reasonably competent attorney. Thus, Widell was not constitutionally ineffective due to unfamiliarity with defendant's case.

Defendant next argues that Widell was ineffective because he did not properly question Livingston and Edwards on cross-examination. During cross-examination, Widell asked questions to support the argument that defendant acted in self defense and emphasized that neither witness had actually seen the stabbing. Defendant does not argue any details beyond his assertion that the witnesses were not "properly questioned," and it is unclear what different or additional questions defendant believes should have been asked. There is a strong presumption that an attorney's conduct falls within the range of reasonable professional assistance, and the Court sees nothing in the questions Widell did or did not ask on cross-examination to overcome that presumption. Therefore, Widell was not constitutionally ineffective in cross-examining Livingston and Edwards.

Defendant's last argument is that Widell was ineffective by turning a Grade C violation hearing into a Grade A violation. This argument is premised on a misunderstanding of the proceedings. At defendant's first revocation hearing, he stipulated the Grade C violations in the superseding order on supervised release. At the January 27, 2016 hearing, the only remaining allegation in the superseding order on supervised release was whether defendant has violated a mandatory condition of supervised release by committing the state law violation of assault and battery with a dangerous weapon. A Grade A violation is defined as "conduct constituting . . . a

federal, state, or local offense punishable by a term of imprisonment exceeding one year that . . . is a crime of violence." U.S. Sentencing Guidelines Manual § 7B1.1(a)(1). Assault and battery with a dangerous weapon is a crime of violence punishable by up to ten years in prison. See Okla. Stat. tit. 21, § 645. Nothing Widell did at the hearing could have caused a Grade C violation hearing to result in a Grade A violation because the issue was always whether defendant had committed a Grade A violation. Thus, Widell was not constitutionally ineffective by turning a Grade C violation hearing into a Grade A violation. Because the Court finds that Widell's performance was not delinquent under the first prong of Strickland, there is no need for the Court to address prejudice under Strickland's second prong.

**IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 57) is **denied**. A separate judgment is entered herewith.

**DATED** this 19th day of April, 2017.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE